

FILED
JUL 24 2012

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DEBORAH GEIKEN, | \* | CIV 11-4127 |
| Plaintiff, | \* | MEMORANDUM OPINION |
| vs. | \* | RE: SUMMARY JUDGMENT |
| THARALDSON EMPLOYEE MANAGEMENT CO., a North Dakota Corporation; and UMR, INC., a Delaware Corporation, Defendants. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This action requesting enforcement of Plaintiff's rights as a participant and beneficiary of a group health benefit plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq., and the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA),29 U.S.C. § 1161, et seq., was removed from state court to this Court. Pending before the Court is the motion for summary judgment submitted by Defendants Tharaldson Employee Management Company and UMR, Inc.( Doc. 23). The Court has heard argument on the motion for summary judgment..

## FACTUAL BACKGROUND

Defendant Tharaldson Employee Management Company (Tharaldson), is a North Dakota company that builds and operates hotels throughout the United States. According to the Defendants' statement of material fact #2 and the Plaintiff's response thereto, Tharaldson is the plan administrator for the Tharaldson Employee Management Company Health Insurance Coverage Plan (Plan). During oral argument on the summary judgment motion, however, counsel for Plaintiff was not contradicted when he stated that it was his understanding that on January 1, 2010, UMR took over administering the Plan. The Plan is self-funded using employer and employee contributions and is governed by the Employee Retirement Income Security Act (ERISA). According to the statement of material fact #5 and the response thereto. Defendant UMR is the third-party claims administrator for the Plan. The

Summary Plan Description[1] provides that "the Plan Administrator shall have full and sole discretionary authority to interpret all plan documents, including this [Summary Plan Description], and make all interpretive and factual determinations as to whether any individual is entitled to receive any benefit under the terms of this Plan." The Summary Plan Description also provides that "[a]ny interpretation, determination or other action of the Plan Administrator or the Third Party Administrators shall be subject to review only if a court of proper jurisdiction determines its action is arbitrary or capricious or otherwise a clear abuse of discretion."

Until December 1, 2009, Plaintiff Deborah Geiken was employed as an assistant manager by the Residence Inn in Sioux Falls, South Dakota. The Residence Inn was managed by Tharaldson and Plaintiff was a Tharaldson employee and a participant in the Tharaldson Employee Management Company Health Insurance Coverage Plan. The termination of Plaintiff's employment with Tharaldson was a qualifying event for purposes of continuation of health coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

The Tharaldson Health Benefit Summary Plan Description is the only Plan document that addresses the grace period for payment of COBRA premiums. The Tharaldson Health Benefit Summary Plan Description does not allow for a grace period for the initial payment and provides:

> The due date for subsequent payments is typically the first day of the month for any particular period of coverage, however the Qualified Beneficiary will receive specific payment information including due dates, when the Qualified Beneficiary becomes eligible for and elects COBRA continuation coverage.

Plaintiff was sent a COBRA Election Notice dated February 4, 2010, advising Plaintiff that she was entitled to continue her health care coverage for up to 18 months. The notice explains the steps necessary to elect and maintain COBRA coverage under the Plan and advises the recipient to "read the information contained in this notice very carefully." The notice states that if Plaintiff elects to continue her health care coverage, "[Y]our continuation coverage will begin on 1/1/2010 and can last until 6/30/2011, if the appropriate premiums are paid on time."

Plaintiff was advised in the election notice that to elect continuation coverage, she must complete the enclosed "Enrollment Form" and return it to the address shown on the Payment

---

[1] Summary plan descriptions are considered part of the ERISA plan documents. *Jobe v. Medical Life Ins. Co.*, 598 F.3d 478, 481 (8th Cir. 2010).

Computation Form, and that the completed Enrollment Form needed to be post-marked by 4/4/2010. The election notice further provides:

> The total premiums due each month is shown on the Enrollment Form and on the Payment Computation Form. You should pay the total premium due at the time you send in the Enrollment Form, in order to complete your enrollment and continue your coverage. However, you are allowed to delay the premium payment for up to forty-five days after you have signed, dated and submitted your Enrollment Form. . . . .
>
> Future premiums are due on the first of each month thereafter, and should be mailed on or before the due date. Failure to pay premiums by premium due dates may terminate your participation in the Health Benefits Continuation Plan.

Under the section of the notice entitled "When and how must payment for continuation coverage be made?" is contained the following directions:

> *First payment for continuation coverage*
>
> If you elect continuation coverage, you do not have to send any payment for continuation coverage with the Enrollment Form. However, you must make your first payment for continuation coverage within 45 days after the date of your election. (This is the date the Enrollment Form is postmarked, if mailed.) If you do not make your first payment for continuation coverage in full within 45 days, you will lose all continuation coverage rights under the Plan.
>
> . . .
>
> *Periodic payments for continuation coverage*
>
> After you make your first payment for continuation coverage, you will be required to pay for continuation coverage for each subsequent month of coverage. The amount due for each coverage period for each qualified beneficiary is shown in this notice. The periodic payments can be made on a monthly basis. Under the Plan, these periodic payments for continuation coverage are due on the first day of each month.
>
> . . .
>
> *Grace periods for periodic payments*
>
> Periodic payments are due on the first of the month and you have a maximum 30 day grace period in which to pay your monthly premium. The 30 day grace period protects you from cancellation but claims incurred or prescription submissions may be denied during the grace period ... The plan will not send periodic notices of payment due for these coverage periods.

> If you fail to make a periodic payment before the end of the grace period, you will lose all rights to continuation coverage under the Plan and coverage will be terminated retroactive to the last day of coverage for which payment was made.

Plaintiff completed the COBRA Enrollment Form that was submitted with the COBRA election notice, indicating that she was electing to enroll in the COBRA coverage under the terms of the Plan, and returned the COBRA Enrollment Form to UMR in an envelope that was post-marked February 25, 2010. However, Plaintiff did not send premium payments with the enrollment form as she was not required to do so.

In compliance with the requirement to pay all premiums due within 45 days of the post-marked date of her COBRA Enrollment Form, Plaintiff sent payment of $371.10 ($123.70/month for 3 months) to UMR before April 11, 2010, so as to complete her COBRA enrollment and pay for her COBRA coverage from January 1, 2010, through April 1, 2010. Plaintiff received a Confirmation of COBRA Election Notice dated April 8, 2010, which confirmed Plaintiff's enrollment in COBRA coverage under the Plan.

The Confirmation of COBRA Election Notice stated that Plaintiff's coverage started on January 1, 2010, and extended until April 1, 2010, and advised: "Payments are now paid to 4/1/2010, Your next payment due date is 4/1/2010." Payment coupons were included with the Confirmation of COBRA Election Notice which identified the due date for the next payment as being 4/1/10. Although Plaintiff was within her rights to delay payment of premiums,[2] the payment for her April 2010 COBRA coverage was already due and Plaintiff was already several days into the 30-day grace period when she received the Confirmation of COBRA Election notice and payment coupons. Taking into account the 30-day grace period, Defendant UMR calculated the due date for Plaintiff's premium payment for her April 2010 COBRA coverage as May 1, 2010. No premium payment was made by May 1, 2010, so UMR sent Plaintiff a Termination Notice dated May 10, 2010, listing the reason for termination as: "Required payment was not made on time." Plaintiff sent and UMR

---

[2] 29 U.S.C. § 1162(3)(b) provides: "In no event may the plan require the payment of any premium before the day which is 45 days after the day on which the qualified beneficiary made the initial election for continuation coverage."

4

received a check from Plaintiff for $247.40 by letter post-marked May 5, 2010.

On May 8, 2010, Plaintiff suffered a seizure caused by a blood clot in the head, was then hospitalized for twenty-four days, and incurred over $270,000.00 in medical and hospital expenses. Plaintiff's spouse, Floyd Geiken, sent a letter to UMR dated May 17, 2010, requesting reinstatement of his wife's COBRA coverage. In this letter Mr. Geiken states that he sent the premium payment for Plaintiff's April 2010 COBRA coverage to UMR when he realized it had not been paid and acknowledges that the premium payment was made "four days late." Mr. Geiken further states, "Please consider the short time the payment was late and my attempt to correct the error as soon as it was found." No response was received from Mr. Geiken's letter and Plaintiff appealed the decision to terminate coverage to the benefits coordinator of Defendant Tharaldson by letter dated February 17, 2011. In this letter appeal Plaintiff states:

> To the best of my recollection, I received a Confirmation of COBRA Election letter dated April 8, 2010 indicating that I had a thirty day grace period for continuing payments. . . . In order to make sure that I understood the direction, I called UMR COBRA Administration telephone number and was informed by the representative that I had thirty days from the date of the letter to send my next payment.

In Plaintiff's affidavit in resistance to summary judgment she again maintains that she received the above information from a telephone conversation with a UMR representative. However, Plaintiff has never been able to identify the representative referenced in the February 17, 2011 letter, or the date of the communication, and has not produced any telephone records evidencing any call made by Plaintiff to either Defendant before May 1, 2010.[3] There is a record of a call from Plaintiff to UMR on May 3, 2010, but there is no reference in the record to Plaintiff asking or being told when her next payment must be sent. The decision to terminate coverage was affirmed.[4]

---

[3] Although counsel for Plaintiff served Plaintiff's telephone provider, Midcontinent, with a subpoena duces tecum for Plaintiff's telephone records and counsel for Defendants has requested the records, no telephone records have been provided by Plaintiff.

[4] In correspondence to Plaintiff dated April 4, 2011, UMR references a request for review received on June 3, 2010, and states that Plaintiff's "COBRA continuation coverage under the Tharaldson Employee Management Co. Group Health Plan terminated as of March 31, 2010 due to late payment."

5

Plaintiff brought an action in state court seeking judgment for benefits under the group health plan, based on her position that Defendants failed to provide her with a full thirty-day grace period for the payment of COBRA continuation coverage as required by 29 U.S.C. § 1162(1)(C), and that Defendants should be equitably estopped from relying upon the May 1, 2010 payment deadline based upon the alleged verbal representation made by the UMR representative that the payment deadline was thirty days from the date of the April 8, 2010 election letter. In the alternative, Plaintiff contended that she was entitled to judgment because Defendants' termination of her COBRA continuation coverage was arbitrary and capricious and a clear abuse of discretion under the circumstances. The Defendants removed the case to this Court.

## DISCUSSION

*Summary Judgment and ERISA Action Principles*

A party is entitled to summary judgment if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In ruling on a motion for summary judgment this Court views the evidence and inferences that may reasonably be drawn from the evidence in the light most favorable to the nonmovant. *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 868 (8th Cir. 2005).

When a plan governed by ERISA reserves "discretionary power to construe uncertain terms or to make eligibility determinations ... the administrator's decision is reviewed only for 'abuse ... of his discretion'" by the district court. *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir.2005) (en banc) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). The *Firestone* decision established a "broad standard of deference without any suggestion that the standard was susceptible to ad hoc exceptions." *Conkright v. Frommert*, 130 S.Ct. 1640, 1646 (2010). Under the abuse of discretion standard, a court must affirm a plan administrator's interpretation of the plan unless the interpretation is arbitrary and capricious. *Manning v. American Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010). A court must examine whether the decision was reasonable, and any reasonable decision will stand, even if the court, as an original matter, would interpret the language differently. *King*, 414 F.3d at 998-99.

*Whether Plaintiff was deprived of the full statutory 30-day grace period?*

Plaintiff contends that by the time she received the Confirmation of COBRA Election Notice dated April 8, 2010, and first learned that the next payment was due in April, one third of the month was gone, and she was deprived of the full thirty-day grace period required by 29 U.S.C. § 1162(2)(C). This provision states: "The payment of any premium ... shall be considered to be timely if made within 30 days after the date due or within such longer period as applies to or under the plan."

Plaintiff waited until early April 2010 to send the check dated April 4, 2010, and pay the premiums for the first three months of COBRA coverage from January 1, 2010 through April 1, 2010. Until UMR received the initial premium payments, Plaintiff had no COBRA coverage. When UMR received the check dated April 4, 2010, for the initial premium payments shortly before the April 11, 2010 deadline, Plaintiff's enrollment was then complete and retroactive to January 1, 2010. UMR could not have sent Plaintiff the Confirmation of COBRA Election Notice, which was dated April 8, 2010, significantly earlier than that date because Plaintiff's enrollment was not complete until UMR received the initial premium payments. Although Plaintiff was within her rights to wait until early April 2010 to make the initial payments, the Confirmation of COBRA Election could not be sent out by UMR after the payment for her April 2010 coverage had already become due.

The COBRA Election Notice dated February 4, 2010, advised, "Please read the information contained in this notice very carefully." This Election Notice also clearly advised: "Periodic payments are due on the first of the month and you have a maximum 30 day-grace period in which to pay your monthly premium." The April 8, 2010 Confirmation of COBRA Election also clearly advised: "Payments are now paid to 4/1/2010. Your next payment due date is 4/1/2010." Having the 30 day-grace period run from the April 1, 2010 premium due date is consistent with 29 U.S.C. § 1162(2)(C), the plan description and the notices in this case, and Plaintiff has failed to provide any persuasive authority that she was entitled to having the 30-day grace period run from a later date.

*Whether Defendants should be estopped from denying coverage?*

Plaintiff contends that after receiving the Confirmation of COBRA Election Notice, dated April 8, 2001, she called UMR and asked when her next payment was due. Plaintiff contends that she was informed that her payment was due thirty days after the date of the Confirmation of COBRA Election Notice, or May 8, 2010. Exhibit M to Document 31 is a screen print from the UMR

COBRA Department's telephone call records for Deborah Geiken. The screen print states the "Subject" of the call is "CERT OF PRIOR COVERAGE? PMT?" and the "Description" is "ADVISED THE CERT OF PRIOR COVERAGE WILL PRINT ONCE THE COVERAGE IS TERMINATED FOR THE MEMBER. I WAS CHECKING ON HER PMT INFORMATION AND WHEN I WENT BACK TO THE LINE THERE WAS NO ANSWER AND THEN THE CALL DISCONNECTED." Unfortunately, by the date of the May 3, 2010 telephone call from Deborah Geiken, coverage had lapsed. Plaintiff mailed her premium check on May 5, 2010. Since payments are deemed made when postmarked, Plaintiff contends she made a timely payment based on the directions given her. Plaintiff presented this argument when she appealed the decision to terminate coverage to the benefits coordinator of Defendant Tharaldson by letter dated February 17, 2011.

Plaintiff argues that the doctrine of equitable estoppel applies to whether her COBRA continuation coverage was properly terminated. Plaintiff cites *Lincoln General Hosp. v. Blue Cross / Blue Shield of Nebraska*, 963 F.2d 1136, 1141 (8th Cir. 1992), for the preposition that a plan administrator stands in fiduciary relationship with respect to plan members and has a "duty not to mislead." "The principle of estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny that representation." *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir.1992). Plaintiff further argues that material issues of disputed fact exist as to what was said, and whether Plaintiff reasonably relied to her detriment on what was said, so that summary judgment is not appropriate in this case.

In *Lincoln General Hosp. v. Blue Cross / Blue Shield of Nebraska*, 963 F.2d 1136 (8th Cir. 1992), an ex-wife of a participant in a group health-insurance program was entitled to COBRA continuation of coverage under her husband's plan, provided that either she or her ex-husband notify the plan administrator of their divorce within the 60-day COBRA notice period. Before the end of the 60-day COBRA notice period, the ex-wife lapsed into a coma after being involved in an accident. The ex-husband elected coverage on his ex-wife's behalf and paid only one month's premium for her. Later, an employee of the hospital at which the ex-wife was hospitalized called the insurer to verify the ex-wife's coverage. An employee of the insurer confirmed the ex-wife's COBRA continuation coverage through a computer check of records, but did not inform the hospital that the ex-wife was

8

currently in a "grace period," and that her coverage would lapse in 18 days if the delinquent premiums were not paid. Accurate information of the premium status was sent to the ex-wife the same day of the telephone conversation. Although a personal representative had been appointed for the ex-wife, the personal representative apparently did not check the ex-wife's mail. When hospital bills were submitted the insurer took the position that coverage ended on the last date for which a premium was paid. 963 F.2d at 1138.

The insurer in *Lincoln General Hosp. v. Blue Cross / Blue Shield of Nebraska* was the plan administer. The Eighth Circuit noted this fact and stated, "[T]he duty not to mislead is heightened by the fact that Blue Cross was the plan administrator, and hence stood in a fiduciary relationship with respect to plan members, including family members with hold-over coverage." 963 F.2d at 1141. The Eighth Circuit, after weighing the equities and finding them to be "pretty evenly balanced," held in favor of the insurer, explaining, "What tips the case in favor of Blue Cross, in our view, is that accurate premium information was actually sent to the patient on the very day of the telephone call from the hospital to [the employee of Blue Cross]." 963 F.2d at 1142. In the case at hand, well before Plaintiff suffered her seizure, she received from Defendants unambiguous written information regarding payment due dates and grace periods on payment.

In later cases the Eighth Circuit has held that common-law estoppel principles could not be used to obtain ERISA benefits that are not payable under the terms of a plan. *See Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996); *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 953 (8th Cir.1994), *cert. denied*, 514 U.S. 1050 (1995); *Slice v. Sons of Norway*, 34 F.3d 630, 634 (8th Cir. 1994). The doctrine of estoppel may be applied in ERISA cases only to interpret ambiguous plan terms. *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d at 492. "ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise." *Jensen*, 38 F.3d at 953, *quoted in Antolik v. Saks, Inc.*, 463 F.3d 796, 801 (8th Cir. 2006). For the purpose of determining the motion for summary judgment, the Court views the evidence regarding the alleged conversation between Plaintiff and the UMR representative in the light most favorable to Plaintiff, that is, that the conversation took place and that Deborah Geiken was told "that the payment was due thirty days after the date of the CONFIRMATION OF COBRA ELECTION." With that instruction, the May 5, 2010 premium payment would have been timely. The alleged conversation, however, constitutes a prohibited "oral

9

or informal amendment" to the communicated and unambiguous payment and grace period provisions of the COBRA continued coverage plan in this case. Plaintiff is not allowed to accomplish such an amendment to unambiguous plan provisions through estoppel. *Neumann v. AT & T Commc'n, Inc.*, 376 F.3d 773, 784 (8th Cir. 2004). If estoppel was available in this case, then the Court would proceed to a court trial to weigh the evidence.

In conclusion, Defendants did not violate COBRA, and the termination of Plaintiff's benefits for untimely payment was not arbitrary or capricious or otherwise a clear abuse of discretion. In addition, Plaintiff is not entitled to assert, let alone establish, estoppel as a defense under the facts of this case. Accordingly,

> IT IS ORDERED that the motion for summary judgment submitted by Defendants Tharaldson Employee Management Company and UMR, Inc. (Doc. 23) is granted.

Dated this 24th day of July, 2012.

BY THE COURT:

*[signature]*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Summa Wahpn* *[signature]*
    Deputy